UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In Re:

          100 WEST PARK LLC,

                                  Debtor.
-------------------------------------------------------------X

Case No. 10-73968-ast

Chapter 11

## DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN

      The Debtor, 100 WEST PARK LLC (the "Debtor") proposes the following Third Amended Chapter 11 Plan (the "Plan") pursuant to section 1121(a) of title 11 of the United States Code.

      A Disclosure Statement (the "Disclosure Statement") providing adequate information to vote on the proposed Chapter 11 Plan has been filed. All holders of Claims against the Debtor entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.

### SECTION 1. DEFINITIONS & INTERPRETATIONS

      **A.**     **Definitions**

      1.1     "Debtor", shall mean 100 WEST PARK LLC.

      1.2     "Administrative Expense Claim" means any right to payment constituting a cost or expense of administration of this Chapter 11 case allowed under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtor's estate, (b) any actual and necessary costs and expenses of operating the Debtor's business, (c) any indebtedness or obligations incurred or assumed by the Debtor, as debtor-in-possession, during this Chapter 11 case, and (d) any allowances of compensation and reimbursement of expenses to the extent allowed by final order under sections 330 or 503 of the Bankruptcy Code.

      1.3     "Administrative Bar Date" means the deadline for filing proofs of Administrative Expenses Claims (including Professional Fee Claims), which shall be_____, 2011, as further set forth in Section 6.4 of this Plan.

      1.4     "Allowed" shall mean, with reference any Claim, any claims which have been timely filed, not objected to, or otherwise disallowed by the Bankruptcy Court, and any claims expressly allowed pursuant to this Plan.

      1.5     "Bankruptcy Code" means title 11 of the United States Code, as amended from time to time, applicable to this Chapter 11 case.

1.6 "Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District, or any other court with jurisdiction over this Chapter 11 case.

1.7 "Cash" means legal tender of the United States of America.

1.8 "Claim" has the meaning set forth in section 101 of the Bankruptcy Code.

1.9 "Class" means any group of Claims classified in Section 2 of the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

1.10 "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.11 "Confirmation Hearing" means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.12 "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan, pursuant to, *inter alia*, section 1129 of the Bankruptcy Code.

1.13 "Creditors" shall mean all persons or entities holding allowed claims for secured or unsecured debts, liabilities, undersecured portions of secured debts, demands or contingent or unliquidated or disputed claims of any character whatsoever.

1.14 "Effective Date" means a business day selected by the Debtor on which no stay of the Confirmation Order is in effect. The Effective Date shall be no earlier than 11 days after the later of the Confirmation Date, or the date any stay of the Confirmation Order is dissolved.

1.15 "Estate Assets" means the property of the bankruptcy estate as that term is defined in section 541 of the Bankruptcy Code.

1.16 "Filing Date" shall mean the date the Chapter 11 petition was filed with the Clerk of the Court, May 21, 2010.

1.17 "Interests" means any holder of an instrument evidencing a present ownership interest in the Debtor, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

1.18 "Plan" shall mean this Chapter 11 Plan in its present form, or as it may be amended or supplemented.

1.19 "Plan Funder" shall mean LB Property Acquisition LLC the entity providing the funds necessary to effectuate the Plan.

1.20     "Professional Fee Claim" means an Administrative Claim under section 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for compensation of a professional or other entity for services rendered or expenses incurred in this Chapter 11 Case on or prior to the Effective Date.

1.21     "Reorganized 100 WEST PARK LLC" means 100 WEST PARK LLC, as reorganized pursuant to this Plan on or after the Effective Date.

**B. Interpretation**

Unless otherwise specified, all section, schedule, or exhibit references in the Plan are to the respective section in, or schedule or exhibit to the Plan, as the same may be amended, waived, or modified from time to time. The words "herein", "hereof", "hereto", "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. The hearings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

### SECTION 2.  CLASSIFICATION & TREATMENT OF CLAIMS & INTERESTS

#### (A)     Unclassified Claims

**Administrative Expense Claims**

On the Effective Date, except to the extent that a holder of an Allowed Administrative Expense Claim against the Debtor agrees to a different treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Claim, *provided, however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor, as debtor in possession, shall be paid by the Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instrument evidencing, or other documents relating to such transactions. The Administrative Expense Claim is estimated in the amount of $60,000.00 for Debtor's attorneys pursuant to 11 U.S.C. 503(b). Fees will be paid in cash on the Effective Date of the Plan.

**Tax Priority Claims**

The Plan deals with the claim of the New York State Department of Taxation and Finance (the "NYSDOTF"), a creditor. The NYSDOTF has filed a proof of claim (the "NYSDOTF Priority Claim") in the total amount of $777.78, of which $27.78 is priority.

The Plan does not deal with the claim of the City of Long Beach (the "Long Beach"), a creditor. Long Beach has filed a proof of claim (the "Long Beach Priority Claim") in the total amount of $16,264.13. 100 West Park Ave LLC ("Park Avenue")

3

paid the Long Beach Priority Claim in full on or about October 28, 2010, by using funds advanced to Park Avenue by the Debtor for payment of real estate taxes.

- Pursuant to 11 U.S.C. 1123(a)(1) and 1129(a)(9)(C), the holders of the Tax Priority Claims (the NYSDOTF Priority Claim) are entitled to receive on account of such claims regular installment payments in cash of a total value, as of the Effective Date of the plan, equal to the allowed amount of such claims commencing on the Effective Date of this Plan, including interest. However, for administrative convenience, Debtor proposes to pay the NYSDOTF Priority Claim in the amount of $27.78 in full on the Effective Date of the Plan.

### (B) Classes

**2.1   Class 1        100 West Park Ave LLC (Secured Claim)**

The Plan deals with the claim of 100 West Park Ave LLC ("Park Avenue"), a secured creditor. Park Avenue is impaired by the Plan and entitled to vote to accept or reject the Plan. Park Avenue has an allowed secured claim (the "Park Avenue Secured Claim") in the amount of $2,084,382.25. and a Class 5 unsecured claim in the estimated amount of $449,000.00. (*See* Class 5 below.) Park Avenue has been receiving monthly adequate protection payments from the Debtor in the amount of $12,705.00 (the "Adequate Protection Payments").

Park Avenue shall receive on account of the Park Avenue Secured Claim in the amount of $2,084,382.25 a cash payment on the Effective Date of the Plan in the amount of $175,000.00. This cash payment shall reduce the Park Avenue Secured Claim to the amount of $1,909,382.25.

Furthermore, Park Avenue has received the amount of $55,595.00 from the receiver (the "Receiver") appointed in the foreclosure action (the "State Court Action"). The Debtor and Park Avenue had previously stipulated that these funds (the "Receiver Funds") were to be utilized to pay the open real estate taxes. These real estate taxes have not been paid by Park Avenue thus the Plan provides for their payment exclusive of the Receiver Funds (*See* Classes 2 and 3 below). Therefore Park Avenue shall further receive on account of the Park Avenue Secured Claim in the amount of $2,084,382.25 a cash payment on the Effective Date of the Plan in the amount of $38,486.52. This additional cash payment shall further reduce the Park Avenue Secured Claim to $1,870,895.73.

In full satisfaction of the remaining $1,870,895.73 balance of Park Avenue's Secured Claim against the Debtor, Park Avenue shall receive payments of principal and interest at 5.5% for a monthly payment of $10,622.74 for 120 months with a final payment of $1,544,255.84 on or before the ten year anniversary of the Effective Date.

The Park Avenue Claim is impaired. Park Avenue shall retain the lien securing Park Avenue's interest in the Debtor's Property.

**2.2   Class 2        Nassau County Secured Claim**

4

The Plan deals with the Nassau County secured claim (the "Nassau Secured Claim") in the approximate amount of $43,205.92 for unpaid real estate taxes.

The holder of the Nassau Secured Claim shall receive on account of the Nassau Secured Claim monthly cash payments with interest at 3% in the amount of $956.33 for 48 months thereby fully satisfying the Nassau Secured Claim.

**2.3   Class 3        Nassau County 1129(a)(9) Claim (Secured Claim)**

The Plan deals with the Nassau County secured claim in the approximate amount of $72,411.83 for unpaid real estate taxes incurred and last payable without penalty within one year prior to the Petition Date (the "Nassau 1129 Claim").
The holder of the Nassau 1129 Claim shall receive on account of the Nassau 1229 Claim monthly cash payments with interest at 3% in the amount of $1,602.79 for 48 months thereby fully satisfying the Nassau 1129 Claim.

**2.4   Class 4        General Unsecured Claims**

**2.4.1**   The Plan deals with the claim of Abonee Realty ("Abonee"), an unsecured creditor. Abonee has filed a proof of claim (the "Abonee Claim") in the total amount of $76,855.06.
- Abonee shall receive on account of the Abonee Claim deferred cash payments totaling $3,842.75 in 24 monthly payments of $160.11, commencing on the Effective Date of the Plan.

**2.4.2**   The Plan deals with the claim of Leo and Bonnie Zucker (collectively, the "Zuckers"), an unsecured creditor. The Zuckers have filed a proof of claim (the "Zucker Claim") in the total amount of $225,000.00.
- The Zuckers shall receive on account of the Zucker Claim deferred cash payments totaling $11,250.00 in 24 monthly payments of $468.75, commencing on the Effective Date of the Plan.

**2.4.3**   The Plan deals with the claim of Scher & Scher ("Scher & Scher"), an unsecured creditor. Scher & Scher has filed a proof of claim (the "Scher & Scher Claim") in the total amount of $20,000.00.
- Scher & Scher shall receive on account of the Scher & Scher Claim deferred cash payments totaling $1,000.00 in 24 monthly payments of $41.67, commencing on the Effective Date of the Plan.

**2.5   Class 5        Park Avenue Unsecured Claim**

The Plan deals with the unsecured portion of the Park Avenue Claim (the "Park Avenue Unsecured Claim") in the estimated amount of $449,000.00.
- Park Avenue shall receive payment of $22,450.00 representing 5% of the allowed amount of the Park Avenue Unsecured Claim.
- However, Park Avenue has already received payment in full on account of the Park Avenue Unsecured Claim. By utilizing the balance of the Receiver Funds held by

Park Avenue in the amount of $17,108.48 and by virtue of the fact that Park Avenue has already received the amount of $5,341.52 towards the Park Avenue Unsecured Claim as detailed below, the Park Avenue Unsecured Claim is fully satisfied.

- The Debtor's Adequate Protection Payments were based on the $2,200,000.00 value of Park Avenue's interest in the Debtor's Property. This $2,200,000.00 did not take into account the $115,617.75 due on the Nassau County Tax Claims which reduces Park Avenue's interest in the Debtor's Property to $2,084,382.25. The Adequate Protection Payment amount calculated on $2,084,382.25 comes to $12,037.31, leaving a difference from the original Adequate Protection Payment amount of $667.69. Therefore Park Avenue has already received on account of the Park Avenue Unsecured Claim payments in the amount of $667.69 for eight months totaling $5,341.52.

**2.6     Class 6          Administrative Convenience Class**

**2.6.1**   The Plan deals with the claim of Great American Brokerage ("Great American"), an unsecured creditor. Great American filed a proof of claim (the "Great American Claim") in the total amount of $1,760.00.

- Great American shall receive on account of the Great American Claim a cash payment totaling $88.00 on the Effective Date of the Plan.

**2.6.2**   The Plan deals with the claim of the Internal Revenue Service (the "IRS"), an unsecured creditor. The IRS has filed a proof of claim (the "IRS Claim") in the total amount of $549.01.

- The IRS shall receive on account of the IRS Claim a cash payment totaling $27.45 on the Effective Date of the Plan.

**2.6.3**   The Plan deals with the claim of Kelly & LeBeck, P.C. ("Kelly, LeBeck"), an unsecured creditor. Kelly, LeBeck has filed a proof of claim (the "Kelly, LeBeck Claim") in the total amount of $1,840.00.

- Kelly, LeBeck shall receive on account of the Kelly, LeBeck Claim a cash payment totaling $92.00 on the Effective Date of the Plan.

**2.6.4**   The Plan deals with the claim of the New York State Department of Taxation and Finance (the "NYSDOTF"), a creditor. The NYSDOTF has filed a proof of claim in the amount of $777.78 of which $750.00 is unsecured (the "NYSDOTF Unsecured Claim").

- The NYSDOTF shall receive on account of the NYSDOTF Unsecured Claim a cash payment totaling $37.50 on the Effective Date of the Plan.

**2.6.5**   The Plan deals with the claim of Silverstein & Weiss, P.C. ("Silverstein & Weiss"), an unsecured creditor. Silverstein & Weiss has filed a proof of claim (the "Silverstein & Weiss Claim") in the total amount of $3,600.00.

- Silverstein & Weiss shall receive on account of the Silverstein & Weiss Claim a cash payment totaling $180.00 on the Effective Date of the Plan.

**2.6.6** The Plan deals with the claim of Z-Best Maintenance ("Z-Best"), an unsecured creditor. Z-Best has filed a proof of claim (the "Z-Best Claim") in the total amount of $325.87.

- Z-Best shall receive on account of the Z-Best Claim a cash payment totaling $16.29 on the Effective Date of the Plan.

**2.7    Classes of Claims and Interests**

The following table (i) designate the classes of Claims against, and Interests in, the Debtor, and (ii) specify which of those classes are (a) impaired or unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, or deemed to reject the Plan.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Park Avenue Secured Claim | Impaired | Yes |
| Class 2 | Nassau Secured Claim | Impaired | Yes |
| Class 3 | Nassau 1129 Claim | Impaired | Yes |
| Class 4 | General Unsecured Claims | Impaired | Yes |
| Class 5 | Park Avenue Unsecured Claim | Impaired | Yes |
| Class 6 | Administrative Convenience | Impaired | Yes |
| Class 7 | Equity Interests | Impaired | No |

**Class 1:    Park Avenue (Secured Claim)**

**A.    Impairment and Voting.**  Class 1 is impaired by the Plan. The holder of Class 1 Claim is entitled to vote on the Plan.

**B.    Treatment.**

Park Avenue shall receive on account of the Park Avenue Secured Claim in the amount of $2,084,382.25 a cash payment on the Effective Date of the Plan in the amount of $175,000.00. This cash payment shall reduce the Park Avenue Secured Claim to the amount of $1,909,382.25. Park Avenue shall further receive the amount of $38,486.52 from the Receiver Funds Park Avenue is holding thereby further reducing the Park Avenue Secured Claim to the amount of $1,870,895.73.

In full satisfaction of the remaining $1,870,895.73 balance of Park Avenue's Secured Claim against the Debtor, Park Avenue shall receive payments of principal and interest at 5.5% for a payment of $10,622.74 for 120 months with a final payment of $1,544,255.84 on or before the ten year anniversary of the Effective Date.

Park Avenue will preserve its mortgage lien secured by Debtor's Property through and including the final payment, on account of the Park Avenue Claim.

**Class 2: Nassau Secured Claim**

**A. Impairment and Voting.** Class 2 is impaired by the Plan. The holder of the Class 2 Claim is entitled to vote on the Plan.

**B. Treatment.**

The holder of the Nassau County Secured Claim will be paid as follows: on account of the Nassau Secured Claim in the approximate amount of $43,205.92 for unpaid real estate taxes, such holder shall receive on account of the Nassau Secured Claim monthly cash payments with interest at 3% in the amount of $956.33 for 48 months thereby fully satisfying the Nassau Secured Claim.

**Class 3: Nassau 1129 Claim**

**A. Impairment and Voting.** Class 3 is impaired by the Plan. The holder of the Class 3 Claim is entitled to vote on the Plan.

**B. Treatment.**

The holder of the Nassau 1129 Claim will be paid as follows: The holder of the Nassau 1129 Claim shall receive on account of the Nassau 1129 Claim monthly cash payments with interest at 3% in the amount of $1,602.79 for 48 months thereby fully satisfying the Nassau 1129 Claim.

**Class 4: General Unsecured Claims**

**A. Impairment and Voting.** Class 4 is impaired by the Plan. The holders of Class 4 Claims are entitled to vote on the Plan.

**B. Treatment.** The holders of Class 4 Claims will be paid as follows: Payment of 5% of the allowed amount of the Class 4 Claims in 24 equal monthly payments, commencing on the Effective Date of the Plan.

**Class 5: Park Avenue Unsecured Claim**

**A. Impairment and Voting.** Class 5 is impaired by the Plan. The holder of a Class 5 Claim is entitled to vote on the Plan.

**B. Treatment.** The holder of the Class 5 Claim will be paid as follows: Park Avenue shall receive payment of $22,450.00 representing 5% of the allowed amount of the Park Avenue Unsecured Claim.

- However, Park Avenue has already received payment in full on account of the Park Avenue Unsecured Claim. By utilizing the balance of the Receiver Funds held by Park Avenue in the amount of $17,108.48 and by virtue of the fact that Park Avenue already received the

amount of $5,341.52 towards the Park Avenue Unsecured Claim as detailed below, the Park Avenue Unsecured Claim is fully satisfied.

- The Debtor's Adequate Protection Payments were based on the $2,200,000.00 value of Park Avenue's interest in the Debtor's Property. This $2,200,000.00 did not take into account the $115,617.75 due on the Nassau County Tax Claims which reduces Park Avenue's interest in the Debtor's Property to $2,084,382.25. The Adequate Protection Payment amount calculated on $2,084,382.25 comes to $12,037.31, leaving a difference from the original Adequate Protection Payment amount of $667.69. Therefore Park Avenue has already received on account of the Park Avenue Unsecured Claim payments in the amount of $667.69 for eight months totaling $5,341.52.

**Class 6:** **Administrative Convenience Claims**

**A.** **Impairment and Voting.** Class 6 is impaired by the Plan. The holders of Class 6 Claims are entitled to vote on the Plan.

**B.** **Treatment.** The holders of Class 6 Claims will be paid as follows: Payment of 5% of the allowed amount of the Class 6 Claims in full on the Effective Date of the Plan.

**Class 7:** **Equity Interests**

**A.** **Impairment and Voting.** Class 6 is impaired by the Plan. The holders of Class 6 Claims are deemed to reject the Plan.

**B.** **Treatment.** The holders of Equity Interests shall transfer their interest in the Debtor to the Plan Funder.

**SECTION 3. MEANS FOR EXECUTION OF PLAN**

The Debtor shall retain the property of the estate. All Estate Assets shall vest in the bankruptcy estate pursuant to section 541(a) and 1141(b) free and clear of all liens, Claims, and encumbrances, except to the extent of Allowed Claims pursuant to the terms specified in the Plan.

Business operations, currently consisting of leasing the retail and professional office space at the Property, shall continue during the period post-confirmation. (*See* Debtor's projection of operations through March 2021 attached as Exhibit "B" to the Debtor's Disclosure Statement.) Debtor shall continue to exist as Reorganized 100 WEST PARK LLC after the Effective Date.

The monthly payments called for pursuant to the Plan shall be funded from cash generated from the Debtor's leasing of the Property's retail and professional office spaces which currently generates in excess of $29,000.00 per month. (*See* Debtor's monthly operating report for the month of December 2010, attached as Exhibit "C" to the Debtor's Disclosure Statement.)

Currently the Debtor, through the use of its rental receipts has been managing the upkeep of the Property and paying the Debtor's operating expenses which amount to, on a monthly average, $6,923.33 per month. This $6,923.33 does not include the Debtor's monthly adequate protection payment in the amount of $12,705.00 and the Debtor's monthly real estate tax payments in the amount of $6,600.00, both to Park Avenue.

The Plan proposed by the Debtor calls for monthly payments in the amount of $10,622.74 for the Class 1 claim, $956.33 for the Class 2 Claim, $1,602.79 for the Class 3 Claim, and $670.53 for Class 4 claims (general unsecured claims), for total monthly payments by the Debtor in the amount of $13,852.39 (not including real estate taxes and operating expenses). However, it should be noted that Park Avenue, instead of receiving the $12,705.00 monthly adequate protection payment, will be receiving $10,622.74 per month pursuant to the treatment of its allowed secured claim under the Plan.

Thus, currently the Debtor's total operating expenses (including debt service and real estate taxes) are averaging a little over $26,200.00 per month and under the Plan the Debtor's Plan payments and operating expenses (including debt service and real estate taxes) shall be averaging almost $27,400.00 per month. The Debtor's monthly rental receipts are in excess of $29,000.00 per month therefore the Debtor will be able to maintain the payments called for in the Plan.

Furthermore, the Plan Funder will directly deposit the amount of $139,530.98 into Reorganized 100 WEST PARK LLC's bank account on the Effective Date of the Plan creating an unrestricted reserve fund (the "Reserve Fund"). This Reserve Fund will ensure that in the case any emergencies arise the Debtor will be able to meet its monthly payment obligations under the Plan.

The cash payments to be made on the Effective Date of the Plan totaling approximately $375,000.00, which include the cash payment to Park Avenue on account of the Park Avenue Secured Claim, the cash payment for Administrative Expenses, the cash payments on account of the Administrative Convenience Claims, the cash payment on account of the NYSDOTF Priority Claim, and the cash payment for the Reserve Fund, will be provided by the Plan Funder. The funds for these cash payments are currently being held in the Plan Funder's attorney's escrow account. (*See* affirmation from the Plan Funder's attorney attesting to the fact that the funds necessary for the payments called for in the Plan are currently being held in escrow, attached as Exhibit "D" to the Debtor's Disclosure Statement.)

The Plan Funder is a recently formed entity whose principal, Mark Butler ("Butler"), is extremely familiar with the Debtor's Property and has a long-standing relationship with the Debtor and its managing member, Leo Zucker. In addition to being the principal of the Plan Funder, Butler is also the owner of Long Beach Wireless, a longstanding tenant in the Debtor's Property.

Furthermore, Exhibit D attached hereto details the terms and conditions upon which the transfer of equity will occur as well as the terms and conditions under which the funds held in escrow shall be released by the Plan Funder.

10

All other payments to be made under the Plan after the Effective Date shall be made from the Reorganized Debtor's operating revenue.

Except as otherwise provided in this Plan, the Confirmation Order, or in any document, instrument, release or other agreement entered into in connection with this Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor and its estate shall retain any causes of action and shall retain the powers of a debtor-in-possession post-confirmation.

Reorganized 100 WEST PARK LLC, as the successor in interest to the Debtor, may enforce, sue on, settle or compromise (or decline to do any of the foregoing) any claims and causes of action retained pursuant to the above paragraph.

## SECTION 4.  ACCEPTANCE OR REJECTION OF THE PLAN

### 4.1.  Voting of Claims

Each holder of an Allowed Claim in an impaired Class of Claims shall be entitled to vote to accept or reject the Plan.  For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject the Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one entity or any affiliate thereof shall be aggregated and treated as one Allowed Claim in such Class.

### 4.2.  Acceptances Necessary to Confirm Plan

At the Confirmation Hearing, the Bankruptcy Court must determine, among other things, whether each impaired Class, if any, has accepted the Plan.  Under section 1126 of the Bankruptcy Code, an impaired Class is deemed to have accepted the Plan if at least 2/3 in amount and more than 1/2 in number of the Allowed Claims of Class members who have voted to accept or reject the Plan have voted for acceptance of the Plan.  Further, unless there is acceptance of the Plan by all members of an impaired Class, the Bankruptcy Court must also determine that under the Plan, Class members will receive property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Class members would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date of the Plan.

### 4.3  Confirmation of the Plan Without the Necessary Acceptances

The Plan may be confirmed even if it is not accepted by one or all of the impaired Classes, if any, if the Bankruptcy Court finds that the Plan does not discriminate unfairly against and is fair and equitable as to such Class or Classes.  This provision (the "Absolute Priority Rule") is set forth in section 1129(b) of the Bankruptcy Code and requires that, among other things, the claimants must either receive the full value of their claims or, if they receive less, no Class with junior liquidation priority may receive anything.  In this respect, the Absolute Priority Rule requires payment in full to a senior class of creditors before any payments can be made to junior interests.  There is an exception to the Absolute Priority Rule which is the new value

exception (the "New Value Exception"). The holders of equity interests will be transferring all of their interests to the Plan Funder which is providing the funding necessary to effectuate the Plan. The Debtor's current managing member (Zucker) will provide management expertise for which no compensation will be provided. The Debtor expects that Zucker will be able to purchase back some of his equity interest over time. Furthermore, the Absolute Priority Rule only arises when a court confirms a plan over the objections of a class that the plan is not fair and equitable. The Debtor may, at its option, choose to rely upon this provision to seek confirmation of the Plan if it is not accepted by an impaired Class or Classes of Creditors. However, it should be noted that, creditors, by voting for the Plan will waive their right to assert the violation of the Absolute Priority Rule as an objection to the Plan.

## SECTION 5.  JURISDICTION OF THE COURT

The Bankruptcy Court shall retain jurisdiction until this Plan has been substantially consummated, for all appropriate purposes, including, but not limited to the following purposes:

**5.1** The classification of the Claim of any creditor and re-examination of Claims which have been filed and/or allowed for purposes of voting, and the determination of such objections as may be filed to creditors' Claims, including a determination as to that portion of secured Claims which are secured and which portions are unsecured. The failure by the Debtor to object to, or to examine any Claim for the purposes of voting, shall not be deemed to be a waiver of the Debtor's right to object to, or re-examine the Claim in whole or in part.

**5.2** Determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtor or any other party, including without any limitation to, any right of the Debtor, or the Debtor to recover assets pursuant to the provisions of Title 11 of the United States Code.

**5.3** The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purposes and intents of this Plan.

**5.4** The modification of this Plan after confirmation pursuant to Bankruptcy Rules and Title 11 of the United Sates Code.

**5.5** The enforcement and interpretation of the terms and conditions of the Plan.

**5.6** Entry of any Order, including injunctions, necessary to enforce the title, rights and powers of the Debtor, and imposition of such limitation, restrictions, terms and conditions of such title, rights and powers as this Court may deem necessary.

**5.7** Entry of an Order concluding and terminating this case.

## SECTION 6.  MISCELLANEOUS PROVISIONS

### 6.1. Payment of Statutory Fees

In accordance with Section 1129(a)(12) of the Bankruptcy Code, all fees due payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code have been paid by the Debtor. The Plan further provides that on the Effective Date, and thereafter as may be required through the entry of a Final Decree, the Debtor shall pay in Cash all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

### 6.2 Unexpired leases to be assumed

Pursuant to Bankruptcy Code section 365(a) and 1123(b)(2) of the Bankruptcy Code, the Leases set forth in schedule G of the petition, and subsequent amendments thereof, by and between the Debtor and its tenants shall be deemed assumed by the Debtor on the Confirmation Date and effective as of the Effective Date.

### 6.3 Approval of Assumption

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to Bankruptcy Code section 365(a) and 1123(b)(2), of the assumption of the Leases by and between the Debtor and its tenants.

### 6.4 Administrative Expenses Claims

This Plan shall serve as notice of the Administrative Claims Bar Date. All requests for payment of an Administrative Expenses Claim must be filed with the Bankruptcy Court and served on counsel for the Debtor no later than the Administrative Claims Bar Date, which date shall be _____, 2011.

Unless the Debtor objects to an Administrative Expenses Claim within ninety (90) days after the Administrative Bar Date, such Administrative Expenses Claim shall be allowed in the amount requested. In the event that the Debtor objects to an Administrative Expenses Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Expenses Claim. Notwithstanding the foregoing, the Debtor or the Reorganized 100 WEST PARK LLC, may pay in their discretion, in accordance with the terms and conditions of any agreements relating thereto, any Administrative Expenses Claim as to which no request for payment has been timely filed but which is paid or payable by the Debtor in the ordinary course of business.

### 6.5 Substantial Consummation

After the Effective Date, upon the first payment under the Plan, the Plan shall be deemed to be substantially consummated under section 1101 of the Bankruptcy Code.

### 6.6 Amendments

**(a)  Plan Modifications.** The Plan may be amended, modified, or supplemented by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code,

except as the Bankruptcy Court may otherwise direct.  In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan, the Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

**(b)  Other Amendments.**  Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

### 6.7  Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 6.8  Severability

In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Plan proponents, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The confirmation order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 6.9  Headings

Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

### 6.10  Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of the Bankruptcy Rule 9006 shall apply.

### 6.11  Notices

All notices, requests, demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be

deemed to have been duly given or made when actually delivered or, in the cases of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

>100 WEST PARK LLC
>Debtor and Debtor-in-possession
>100 West Park Avenue, Suite 204
>Long Beach, New York 11561
>Telephone: (516) 432-1722
>Telecopier: (516) 432-0560
>
>- and -
>
>Lester & Associates, P.C.
>Attorneys for Debtor and Debtor in Possession
>600 Old Country Road, Suite 229
>Garden City, New York 11530
>Telephone: (516) 357-9191
>Telecopier: (516) 357-9281
>
>- and -
>
>LB Property Acquisition LLC
>c/o Gerard R. Luckman, Esq.
>SilvermanAcampora LLP
>100 Jericho Quadrangle, Suite 300
>Jericho, New York 11753
>Telephone: (516) 479-6300
>Telecopier: (516) 479-6301

Dated: Garden City, New York  
       February 11, 2011

Respectfully submitted,

By: /s/ Leo Zucker  
    100 WEST PARK, LLC  
    By: Leo Zucker  
    Title: Managing Member

LESTER & ASSOCIATES, P.C.  
Attorneys for the Debtor and  
Debtor-in-Possession

By: /s/ Roy J. Lester  
    By: Roy J. Lester, Esq.  
    600 Old Country Road, Suite 229  
    Garden City, New York 11530  
    (516) 357-9191  
    rlester@rlesterlaw.com